CENTRAL OF GEORGIA RAILWAY COMPANY *v.*
KEATING.

No. 9365.   July 13, 1933.

*Beck, Goodrich & Beck* and *Boykin & Boykin,* for plaintiff in
error.

*Willis Smith* and *Smith & Millican,* contra.

Bell, J.   J. B. Keating brought two suits against Central of
Georgia Railway Company, one for injuries to himself and for dam-
age to his personal property, and the other for the homicide of his
wife, all claimed to have been caused by the negligence of the de-

fendant. The plaintiff and his wife were on their way from Atlanta to Talladega, Alabama, and were traveling in a heavy Packard automobile which was being driven by the plaintiff. For some distance between Bremen and Carrollton a line of the defendant's railroad paralleled the highway upon which the plaintiff and his wife were traveling. They reached a point where the public road curved to the left and crossed a bridge over the railroad-track. The plaintiff's automobile fell off the bridge, with the result that the plaintiff was personally injured, his automobile was wrecked, and his wife was killed. Upon a trial of the suit for the homicide of the plaintiff's wife, the jury found a verdict in favor of the defendant, after which the court granted a new trial. Some time later, the plaintiff amended each petition by adding a second count, for the purpose only of varying the details of the transaction upon which the actions were predicated. These amendments were allowed in each case, several terms after the first term. Upon the allowance of the amendments, the defendant filed a plea in abatement in each case, claiming that the plaintiff's cause of action was single, so that as to each action there was another suit pending between the same parties for the same alleged tort. The defendant also filed a demurrer and an answer to the second count of each petition. The court overruled the demurrers and struck the pleas in abatement, and the two cases were then tried together. The plaintiff recovered a verdict for substantial damages upon the second count of each petition. The defendant's motions for a new trial were overruled, and both cases were carried to the Court of Appeals. That court reversed the judgment refusing a new trial in the suit for the homicide of the plaintiff's wife, but affirmed the judgment in the suit for personal injuries to the plaintiff and for damages to his automobile. The latter case was then brought by certiorari to the Supreme Court. Certiorari was granted mainly for the purpose of considering an important question relating to the grade-crossing elimination act of 1927, but the petition for certiorari also raised other questions which are now to be decided. For the decision of the Court of Appeals, see 45 *Ga. App.* 811 (165 S. E. 873).

█ The defendant contended that its duties with respect to this bridge or overpass and the approaches thereto were determined by the act of August 23, 1927 (Ga. L. 1927, p. 299), known as the

grade-crossing elimination act, and not by the provisions of the Code, §§ 2673, 2674. The bridge was constructed prior to 1927, and neither the county nor the State road authorities have taken any steps to bring about its "improvement or betterment." The Court of Appeals properly held that in these circumstances the act of 1927 was inapplicable. This is the necessary conclusion in view of sections 8 and 9. Counsel for the defendant speak of the anomalous situation that will be created by such an interpretation. The proposition ruled is not strange by any means. For instance, the act of 1888, by which counties were made liable for damages caused by defective bridges, does not fix a liability where the bridge was constructed before the passage of the act. *Warren County* v. *Evans,* 118 *Ga.* 200 (44 S. E. 986) ; *Joyce* v. *Whitfield County,* 28 *Ga. App.* 797 (113 S. E. 52).

■ We agree with the Court of Appeals that the plea in abatement was filed too late. This was a dilatory plea, and should have been filed at the first term. Civil Code (1910), § 5641; *Merritt* v. *Bagwell,* 70 *Ga.* 578 (3 a). The amendment was not a material one so far as the right to file a plea in abatement was concerned. If the petition was subject to abatement, as contended, this fact was apparent before as well as after the amendment. The amendment did not open the petition to such a plea for the first time. "An amendment which does not so change a plaintiff's petition as for the first time to make a particular defense available is not to be regarded 'material,' within the meaning of" section 5652 of the Code. *Quillian* v. *Johnson,* 122 *Ga.* 49 (3) (49 S. E. 801) ; *White* v. *North Georgia Electric Co.,* 136 *Ga.* 21 (3) (70 S. E. 639) ; Chapman *v.* Davis, 4 Gill (Md.), 166. In this view, we do not decide the question whether the cause of action was single or double. See, on that question, *Georgia Railway & Power Co.* v. *Endsley,* 167 *Ga.* 439 (145 S. E. 851, 62 A. L. R. 256) , reversing 37 *Ga. App.* 439 (140 S. E. 386) ; *Smith* v. *Wood,* 167 *Ga.* 630 (146 S. E. 441) ; *Atlantic, Valdosta &c. R. Co.* v. *McDilda,* 125 *Ga.* 468 (54 S. E. 140, 114 Am. St. R. 240) ; *Womack* v. *Central Railroad &c. Co.,* 80 *Ga.* 132 (5 S. E. 63) ; Southern Ry. Co. *v.* King, 87 C. C. A. 284 (160 Fed. 332) ; Skoglund *v.* Minneapolis Street R. Co., 45 Minn. 330 (47 N. W. 107, 11 L. R. A. 222, 22 Am. St. R. 733) ; Smith *v.* Cincinnati &c. Ry. Co., 136 Tenn. 282 (189 S. W. 367, L. R. A. 1917C, 543) ; Johnston *v.* Southern Ry. Co., 155 Tenn. 639 (299 S. W. 785, 55 A. L. R. 932),

■ The trial judge charged the jury that "the plaintiff could not recover if the company shall make it appear to the satisfaction of the jury that its employees exercised all ordinary and reasonable care and diligence." It is contended that this charge placed upon the defendant the burden of proving that it was not negligent. The charge is not susceptible of such a construction. No matter which party had the burden of proof, it was true that the plaintiff could not recover if the company showed that its employees exercised the proper care and diligence. Moreover, the court specifically charged the jury that there was no presumption against the railroad company, but that the plaintiff must prove his case as laid.

■ Certain allegations of the petition were challenged by demurrer. The petition was in part as follows:

"5. Petitioner shows that the Carrollton and Bremen Highway from what is known as Mandeville on said defendant company's line of railroad said road and highway in the direction of Carroll-ton, Georgia, runs in a southern direction and that said highway is almost parallel with said railway until it reaches a point about a mile south of Mandeville. Here said highway or dirt road makes a sudden and almost right-angular turn direct east and crosses said railroad over a cut by way of what is known and commonly called an overhead bridge, same being a wooden structure constructed by and maintained by said defendant company, the Central of Georgia Railway Company.

"6. Petitioner shows that said cut is approximately 22 feet deep and in said cut is a line of railroad owned by the defendant company.

"7. Petitioner shows that said bridge is constructed by placing sills approximately 8 by 8 on the ground, one on the west side of said cut and one on the east side, and by placing two sills on piers and then placing sleepers on the sills and flooring the same and placing guard rails on each side of said bridge.

"8. That said bridge is a wooden structure and was built by said railway company and that it was the duty of said railway to maintain and keep said bridge in proper and suitable repair.

"9. Petitioner further shows that he was traveling said road about 9 o'clock at night on the date aforesaid and that he was not familiar with said road and had no knowledge that there was a railroad or an overhead bridge at said point.

"10.   Petitioner further shows that there was no sign, signal, or warning of any character to indicate that there was an overhead bridge or a railroad or any other danger upon approaching said curve or bridge.

"11.   Petitioner further shows that said bridge was defective, the sills being rotten, the guard rails being rotten and not secure as aforesaid and that said bridge was not in proper repair and not safe for people traveling said highway, all of which was unknown to petitioner and known to said defendant company or should have been known to it by the exercise of ordinary diligence.

"12.   Petitioner further shows that on approaching said bridge on said curve as aforesaid, that he was driving his automobile at some 30 or 35 miles per hour when he reached a point some 30 feet from the west side of said bridge [where?] said defendant company had allowed sand, rock and gravel to be raked to the center of said road and accumulate therein and that when his car hit said rock, sand and gravel the rear of said car swerved to the right hand side of said road in the way in which he was driving and headed said car to the north side of said bridge.

"13.   Petitioner further shows that the dangerous condition of said bridge and the approaches thereto was known to the defendant company or should have been known to them by the exercise of ordinary care and was unknown to petitioner as aforesaid.

"14.   Petitioner further shows that said bridge and the approaches thereto on the right of way of said defendant company that it was their duty to erect and maintain the same and that it is familiar with the construction of the same.

"15.   That when petitioner had reached approximately the center of said bridge on the north side he had brought the car almost to a standstill, same not going more than three or four miles per hour, being near the guardrails of said bridge, and he reached across to the right hand side of said car to open the door so that his wife could alight therefrom, when one of the sills of said bridge broke and gave way and the said car struck the guard rail or bannisters of said bridge which broke and gave way said guard rails and sills being rotten and defective and causing said car to fall from said bridge to the ground in said cut and to the railroad track and cross-ties in said cut.   .   .

"22.   That just west of said bridge in the direction of Bremen,

Georgia, there is a sharp curve in road as aforesaid, making same a dangerous curve, and the defendant company had allowed sand, rock and gravel to be raked and accumulate in the center of the road, making the approaches to said bridge a dangerous approach, and that said defendant company had allowed said bridge to decay and rot, making the same a dangerous bridge and unsafe approach to said bridge and an unsafe place to persons traveling said highway. . .

"24. Petitioner further shows that it is the duty of said defendant company to keep said bridge in proper repair and keep the approaches thereto in proper repair so as to be safe for the people traveling said highway.

"25. Petitioner further shows that said defendant company was negligent in all the particulars heretofore stated, and in the particulars which will now be stated: (1) That defendant company was negligent in not having a warning, sign, or signal so as to give notice of the approach of the dangerous curve and said bridge and the approaches to said bridge. (2) That the defendant company was negligent in maintaining and keeping said bridge in a dangerous and unnecessary curve in the approach thereto. (3) That the defendant company was negligent in allowing said sand, rock and gravel to accumulate and be raked in the road in the approach to said bridge."

The defendant demurred to subparagraphs 1, 2, and 3 of paragraph 25, upon the following grounds:

(a) Said subparagraphs are irrelevant and immaterial. (b) There was no legal duty on the defendant to have warnings, signs, or signals to give notice of the approach to said curve or bridge. (c) It is alleged that this bridge was a part of the public road, and it is not charged any act of this defendant in laying it out or keeping it. (d) It is not alleged that the location of the bridge was made by this defendant, nor can it legally be held responsible for the location of said bridge. (e) It does not appear that the defendant was negligent in allowing sand, gravel, and rock to accumulate and to be raked into the road, and no facts are alleged to show that the defendant had knowledge of the same, nor who it is claimed permitted or put the same there, acting for the defendant.

These demurrers were overruled by the trial judge, and that

judgment was affirmed by the Court of Appeals. We agree with this ruling so far as it applied to subparagraphs 1 and 2 of paragraph 25. Civil Code (1910), §§ 2673, 2674, 2590, 2680-82; *Georgia Railroad &c. Co.* v. *Mayo,* 92 *Ga.* 223 (17 S. E. 1000) ; *Cleveland* v. *City Council of Augusta,* 102 *Ga.* 233, 244, 246 (29 S. E. 584, 43 L. R. A. 638) ; *Southern Ry. Co.* v. *Combs,* 124 *Ga.* 1004 (53 S. E. 508) ; *Morgan County* v. *Glass,* 139 *Ga.* 415 (4) (77 S. E. 583) ; *Mitchell County* v. *Dixon,* 20 *Ga. App.* 21 (3) (92 S. E. 405) ; *Atlantic Coast Line R. Co.* v. *Spearman,* 42 *Ga. App.* 536 (156 S. E. 824) ; *Jones* v. *Seaboard Air-Line Ry. Co.,* 44 *Ga. App.* 583 (162 S. E. 301). We have reached a different conclusion, however, as to the allegations contained in subparagraph 3 to the effect that the defendant was negligent in "allowing sand, rock, and gravel to accumulate and be raked in the road in the approach to said bridge." As to these averments the demurrer should have been sustained. The alleged defect was of such a character that it could have been created without fault or negligence on the part of the defendant, and the petition does not allege that any of the agents or servants of the defendant were directly responsible therefor. In these circumstances, it was incumbent upon the plaintiff to show that the defendant had knowledge of the alleged defect, or that it had existed for such a length of time that knowledge thereof would be presumed. *Howington* v. *Madison County,* 126 *Ga.* 699, 701 (55 S. E. 941) ; *City of Rome* v. *Suddeth,* 116 *Ga.* 649 (42 S. E. 1032) ; *Boney* v. *Dublin,* 145 *Ga.* 339 (89 S. E. 197, Ann. Cas. 1918E, 176) ; *Bird* v. *Savannah Electric Co.,* 16 *Ga. App.* 453 (85 S. E. 621) ; Goddard *v.* Boston & Maine Railroad, 179 Mass. 52 (60 N. E. 486) ; Lyons *v.* Boston Elevated Ry. Co., 204 Mass. 227 (90 S. E. 419). The allegations that the defendant knew or should have known of such condition were insufficient even as a charge of constructive knowledge, where it did not appear that the alleged defect had existed for such a length of time that the defendant should have discovered it. *Thomas* v. *Georgia Granite Co.,* 140 *Ga.* 459 (79 S. E. 130) ; *Central of Georgia Ry. Co.* v. *Prior,* 142 *Ga.* 536 (83 S. E. 117) ; *Fulton Ice & Coal Co.* v. *Pece,* 29 *Ga. App.* 507 (2 *a*) (116 S. E. 67).

The defendant also demurred upon similar grounds to the allegations in paragraphs 12 and 22 as to the accumulation of rock, sand and gravel. From what has been said, these demurrers should

in like manner have been sustained. A further assignment of error is controlled by this ruling: The defendant excepted to a charge that the plaintiff would be entitled to recover if he proved any one or more of his alleged grounds of negligence. This charge was error, because the ground of negligence stated in subparagraph 3 of paragraph 25, without more, did not constitute a legal basis of recovery.

From evidence as to skidding-marks and as to injuries to certain guard-posts standing by the highway, the jury would have been authorized to find that the plaintiff was driving at an excessive rate of speed as he approached the bridge. The defendant offered to prove by a witness that a big car passed the home of witness about a half a mile from the scene of the accident, going in that direction and traveling at the rate of 50 to 75 miles per hour; and that this was the only big car that passed the plaintiff's home at or about this time. The plaintiff's own testimony showed that he traveled the route described by the witness; and under all the circumstances the jury would have been authorized to find that the testimony of this witness would have related to the plaintiff and his vehicle. In other words, the question of identity was at least a matter to be determined by the jury. The court erred in not admitting the testimony as to excessive speed. The evidence was admissible as a part of the main transaction; that is, as a part of the res gestæ. Furthermore, where there was evidence that the plaintiff was running at an excessive rate of speed as he approached the bridge, this evidence could be corroborated by proof that the plaintiff was driving at a reckless or dangerous rate of speed a short time previously. The admissibility of such evidence will usually depend upon the particular facts of each case, but in the present case we think the evidence was admissible. Accordingly, we are constrained to disagree with the Court of Appeals and with the trial court upon this point. See, in this connection, *Savannah &c. Ry. Co.* v. *Flannagan,* 82 *Ga.* 579, 588 (9 S. E. 471); *Reed* v. *Southern Ry. Co.,* 37 *Ga. App.* 550 (5) (140 S. E. 921); Stevens v. Potter, 209 Ky. 705 (273 S. W. 470); Schwarting v. Ogram, 123 Neb. 76 (242 N. W. 273, 81 A. L. R. 769); Davies v. Barnes, 201 Ala. 120 (77 So. 612); Tyrrell v. Goslant, 93 Vt. 63 (106 Atl. 585); La-Duke v. Dexter, — Mo. App. (202 S. W. 254); Prince v. State,

12 Ohio App. 347; Van Agthoven *v.* Zumstein, 18 Ohio App. 395; Bailey *v.* Parker, 34 Ohio App. 207 (170 N. E. 607).

*Judgment reversed.   All the Justices concur.*